Post & Schell, P.C.  
BY: JENNIFER E. MAGNESS, ESQUIRE  
E-MAIL: jmagness@postschell.com  
FOUR PENN CENTER  
1600 JOHN F KENNEDY BLVD.  
PHILADELPHIA, PA  19103  
215-587-1000

Attorneys for Defendant  
Wyndham Hotels and Resorts, LLC

| | |
|---|---|
| The ESTATE OF JOHN HELBING by SAN DRA HELBING and ALLISON LIST, Personal Representatives,<br><br>Plaintiffs,<br><br>vs.<br><br>WYNDHAM HOTELS AND RESORTS, LLC,<br><br>Defendant. | IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA<br><br>NO. 1:10-CV-1117 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  **SUMMARY OF FACTS**

This litigation arises out of a slip and fall that occurred on February 1, 2008 at approximately 7 a.m. at the Wyndham Hotel in Gettysburg, PA.  See Plaintiffs' Complaint, a copy of which is attached hereto as Exhibit "A."  Plaintiffs specifically allege that decedent, John Helbing, suffered fatal injuries as result of a slip and fall on black ice in front of the Wyndham Hotel, where John Helbing and Sandra Helbing were guests.  See Exhibit A.

The Helbings were walking across the portico area in front of the hotel, when decedent allegedly slipped and fell as he stepped onto asphalt.  See Deposition of Sandra Helbing, a copy of which is attached hereto as Exhibit "B", at p. 47-49.  Before stepping

onto the asphalt, the Helbings noticed that the ground appeared wet and shiny. See Exhibit B, at p. 54. Decedent stepped from under the portico onto the asphalt instead of walking on the sidewalk located in front of the hotel. See Exhibit B, p. 49.

Michael Myers, the front desk manager of the Wyndham, was standing in the lobby when the incident occurred. See Deposition of Michael Myers, a copy of which is attached hereto as Exhibit "C", at p. 15. After the incident, once the Helbings were in the lobby, Mrs. Helbing told Mr. Myers, that Mr. Helbing fell. See Exhibit C, at p. 15. The Helbings made no further complaints. See Exhibit C, at p. 54. Notably, when Mr. Myers arrived to work at approximately 6:45 a.m., he did not see any ice around the front entrance. See Exhibit C, at p. 29. Additionally, after the incident, Mr. Myers inspected the blacktop and portico area where the alleged slip and fall occurred. See Exhibit C, at p. 22. Mr. Myers noted that the stone pavers under the portico and the blacktop were free of ice.

Weather records indicate that at the time of the incident, freezing rain began around 5:00 a.m. See Weather Records, a copy of which are attached hereto as Exhibit "D." Weather records also show that it was approximately 30 °F around the time of the incident. Additionally, in plaintiffs' Answers to Interrogatories, Mrs. Helbing notes that there were icy conditions the morning of the incident and that she had to scrape ice off of her car windshield that morning. See Plaintiffs' Answers to Interrogatories, a copy of which is attached hereto as Exhibit "E." The freezing rain continued long after the alleged slip and fall. There was no other precipitation the week before the incident.

Significantly, during her deposition, Mrs. Helbing described the icy weather conditions the morning of the accident. See Exhibit B. Not only was it sleeting at the

2

time of the accident, but the entire Gettysburg area was covered in a sheet of ice. See Exhibit B, at p. 63. The weather conditions were generally icy that morning, making the drive to work difficult. See id. According to her testimony, the Helbings were aware that the conditions would be slippery and hazardous, because they were expecting a winter storm that morning. See Exhibit B, at p. 4.

According to Borough of Gettysburg Ordinance, Responsibility for Removal of Snow and Ice from Sidewalks §21-242(1), "....[S]now and ice shall be removed from sidewalks within 12 hours after the cessation of any fall of snow, sleet or freezing rain. See Borough of Gettysburg Ordinance, Responsibility for Removal of Snow and Ice from Sidewalks §21-242(1), a copy of which is attached hereto as Exhibit F.

Shortly before the expiration of the statute of limitations, plaintiffs filed the action and named Wyndham Hotels and Resorts, LLC as the sole defendant. See Exhibit A. Plaintiffs' Complaint makes no allegations referencing ownership or control of the premises. See Exhibit A. Plaintiffs' Complaint names no other defendants.

According to the Wyndham Hotel Franchise Agreement, dated February 18, 2005, the WHC Franchise Corporation and Gateway Gettysburg Hotel Conference Center Partners, L.P. ("Gateway") entered into agreement whereby the franchisee, Gateway, is named owner of the hotel. See Wyndham Hotel Franchise Agreement, a copy of which is attached hereto as Exhibit "G." Further, according to the agreement, the franchisee, Gateway, maintains management control over the hotel. See Exhibit G, at p. 5. The Franchise Agreement further states that WHC Franchise Corporation is the franchisor. See Exhibit G. Accordingly, the named defendant, Wyndham Hotels and Resorts, LLC, is not the owner of the premises and does not control the premises. See Exhibit G.

In addition to the Franchise Agreement, at all relevant times, the Hotel Management Agreement was in effect. See Hotel Management Agreement, a copy of which is attached hereto as Exhibit H. Under the Hotel Management Agreement, Gateway Gettysburg Hotel/Conference Center Partners, L.P. is the owner and Interstate Management Company, LLC ("Interstate") is the operator. See Exhibit H. Further, according to the Hotel Management Agreement, Interstate was responsible for the staff and maintenance of the facility at all relevant times. See Exhibit H. The Hotel Management Agreement and Franchise Agreement clearly indicate that Wyndham Hotels and Resorts, LLC., Gateway and Interstate are three separate and distinct entities. See Exhibit G; See Exhibit H.

Bradley Baer, the hotel's general manager, offered deposition testimony regarding the structure of the hotel management agreement. See Deposition of Bradley Baer, a copy of which is attached hereto as Exhibit "I", at p. 38. Mr. Baer explained that the ownership group is Gateway Gettysburg Hotel and Conference Center Partners. He further testified that the owner contracted with Interstate Hotels and Resorts to manage the property and franchised with Wyndham Hotels. See Exhibit I, at p. 38.

Plaintiffs' Complaint makes no reference to Interstate or Gateway. See Exhibit A. Nor have plaintiffs made any attempt to amend their pleadings at any time after the institution of this suit. Notably, the statute of limitations expired on February 1, 2010. Plaintiffs are now unable to amend their Complaint to add new defendants as the statute of limitations has expired.

I. **LEGAL ARGUMENT**

    A. **Standard for Summary Judgment**

Pennsylvania Rule of Civil Procedure 1035.2 provides as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law:
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

Pennsylvania Rule of Civil Procedure 1035.2.

A proper grant of summary judgment is dependent upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prime facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. McCarthy v. Dan Lepore & Sons Co., Inc., 724 A.2d 938 (Pa. Super. 1998). Significantly, where a motion for summary judgment is predicated upon insufficient facts, the adverse party must come forward with evidence essential to preserve the cause of action. Id. "If the non-moving party fails to come forward with sufficient evidence to establish or contest the material issue to the case, the moving party is entitled to judgment as a matter of law." McCarthy v. Dan Lepore & Sons Co., Inc., *supra.*, at 940 citing Ertel v. Patriot-News Company, 544 Pa. 93, 674 A.2d 1038 (1996), *cert.* denied, --- U.S. ---, 117 S. Ct. 512, 136 L.Ed.2d 401 (1996).

**B.   Plaintiff Named the Improper Party as a Defendant and is Therefore Barred from Recovery**

5

The Pennsylvania Rules of Civil Procedures provide that actions against a corporation or similar entity shall be prosecuted in its "corporate name." Pa.R.C.P. 2177. If the proper party was sued but under the wrong designation, the correction will be allowed. However, where the wrong party is sued, a correction will not be allowed. Hamilton v. Bechtel, 441 Pa. Super. 390, 657 A.2d 980 (1995); Zercher v. Coca-Cola USA, 438 Pa. Super. 142, 651 A.2d 1133 (1994) (Plaintiff sued the company's trademark rather than the company). What is important in this determination is whether different assets will be subject to liability. Powell v. Sutliff, 410 Pa. 436, 189 A.2d 864 (1963).

Further, a plaintiff may not add a new party to the action once the applicable statue of limitations expires. See Anderson Equip. Co. v. Huchber, 456 Pa. Super. 535, 690 A.2d 1239 (Pa. Super 1997).[1] It is the duty of a party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which a right of recovery is based. Hamilton, 441 Pa. Super. 390, 657 A.2d 980, 982 (quoting Hayward v. Medical Center, 530 Pa. 320, 608 A.2d 1040, 1042 (Pa. 1992)).

Fredericks v. Sophocles, 2003 PA Super 291 (Pa. Super. Ct. 2003) is authority for the proposition that a Motion for Summary Judgment must be granted when the plaintiff fails to name the proper defendant in an action. In Fredericks, the plaintiff sued the partnership and the partners for injuries sustained when she slipped and fell on the premises. Id. at 148. The injured party, an invitee, failed to name as a defendant, pursuant to Pa. R. Civ. P. 2127(a) and 2128(a), the partnership that was actually in possession of the property. Id. at 149. Actual ownership of the property could have been

---

[1] In cases where the statute of limitations has expired and a party seeks to amend its pleading to correct the name of the party, the issue is whether the proposed amendment adds a new party to the litigation or merely corrects a party name. Jacob's Air Cond. v. Assoc. Heating, 366 Pa. Super. 430, 433, 531, A.2d 494, 496 (1987).

ascertained easily within the statute of limitations. Id. at 151. Because an amendment to the Complaint would have had the effect of adding a new party, the Court granted the Motion for Summary Judgment and dismissed the plaintiff's Complaint. Id.

Here, plaintiffs named Wyndham Hotels and Resorts, LLC as the single defendant and failed to allege ownership or control in the Complaint. See Exhibit A. Based upon the Hotel Management Agreement and Franchise Agreement, it is clear that at all relevant times Gateway, the franchisee, owned the hotel and Interstate controlled the hotel. See Exhibit G; See Exhibit H. Simple due diligence would have easily alerted plaintiffs of what entities owned and controlled the hotel. Instead, plaintiffs' Complaint has no mention of the parties who actually possess the premises where the alleged incident occurred.

This is not a case of misidentification of a corporate name, but an issue of completely separate and distinct entities that plaintiff failed to name as defendants. Based upon the aforementioned agreements, it is readily apparent that Wyndham Hotels and Resorts, LLC is not merely an incorrect name for Gateway or Interstate. See Exhibit G; See Exhibit H. Gateway, Interstate and the named defendant, Wyndham Hotels and Resorts, LLC, are three separate and distinct entities and the named defendant has no relation to the instant matter. During his deposition, Mr. Baer thoroughly explained the structure of the hotel agreement and the nature of the separate entities. See Exhibit I, at p. 38. Thus, it is clear that any amendment to the Complaint would add a new or different party to this action and therefore cannot be allowed.[2] Further, the statute of

---

[2] Compare Powell v. Sutliff, supra, where plaintiff named the defendant as a company rather than a partnership, an amendment to correct name of the defendant business from company to partnership was allowed since it was clear that the plaintiff named the correct defendant, but under the incorrect designation.

limitations has long expired. Therefore, plaintiff is unable to name any additional parties as defendants. Any amendment to the pleadings to correct the caption to name the proper defendants that own and control the hotel would directly contradict clearly-defined principles.

It is obvious that plaintiffs did not originally institute suit against the proper defendants and equally obvious that any attempt to amend the Complaint would improperly add new parties to this litigation. Accordingly, moving defendant's Motion for Summary Judgment must be granted as plaintiffs have failed to name the proper parties as defendants.

### C.    Plaintiff is Barred from Recovery Based Upon the Hills and Ridges Doctrine

The doctrine of "hills and rides" provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks are always free of ice and snow would be to impose an impossible burden. Gilligan v. Villanova University, 401 Pa. Super. 113, 116, 584 A.1d 1005, 1007 (1991). A prerequisite to the application of the "hills and ridges" doctrine is a finding of generally slippery conditions as opposed to isolated icy patches." Saris v. Charles, 67 Pa. D. & C.4th 545, 550 (2004); Morin v. Traveler's Rest Motel Inc., 704 A.2d 1085, 1087 (Pa. Super. 1997) (Lancaster County). Pennsylvania Courts apply the doctrine of "hills and ridges" not only to persons injured from falling on ice-covered walks or parking areas, but to situations in which business invitees have fallen on ice-covered private parking areas and walks as well. Id.; See Wentz v. Pennswood Apartments, 359 Pa. Super. 1, 518 A.2d 314 (1986).

In order for plaintiff to recover, he must prove that (1) that snow and ice had accumulated in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; and (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall. Heasley v. Carter Lumber, 843 A.2d 1274 (Pa. Super. 2004).

The facts of the instant matter are nearly identical to those of Morin v. Traveler's Rest Motel, 704 A.2d 1085 (Pa. Super. Ct. 1997). In Morin, freezing precipitation began during the early hours of February 12th and continued into the following morning. Id. at 1086. At approximately 7:20 a.m., the plaintiff slipped and fell on a thin blanket of ice that covered the motel's entire parking lot. Id. at 1087. The defendant asserted the hills and ridges doctrine as plaintiff failed to proffer any evidence that the defendant permitted "hills and ridges" to accumulate unreasonably. Id. The plaintiff argued that the motel should have salted the entire parking lot. Id. However, the Court rejected this argument as a basis for liability. Id. The plaintiff was well aware of the slippery conditions because the ground looked wet at the time of her fall. Id. at 1088[3]. Further, the Court rejected the plaintiff's argument that salting the parking lot would not have been an impossible burden. Id. Accordingly, the Court found that the hills and ridges doctrine applied and granted the defendant's Motion for Summary Judgment. Id. at 1089.

---

[3] The plaintiff contended that the defendant had a duty to warn her that generally slippery conditions existed in the parking lot. The Court rejected this claim as the record indicated that the plaintiff was unequivocally aware that freezing precipitation fell in the early morning prior to her fall. Id. at 1089, n.3.

9

In the matter *sub judice*, the weather reports show that freezing rain began 5:00 a.m. on the morning of decedent's fall.[4] Like Morin, all evidence, including weather reports, indicates that the conditions were generally slippery throughout the area. During her deposition, Mrs. Helbing reported that the weather conditions throughout Gettysburg were icy and slippery. See Exhibit B, at p. 63. Also, during her commute to downtown Gettysburg, she experienced slippery conditions. See id. Additionally, plaintiffs have made it clear that they were aware of the slippery conditions. There was freezing rain at the time of the incident and the Helbings were expecting a winter storm that morning. See Exhibit B, at p. 44. Plaintiff, from the hotel window, and later once outside, saw that blacktop appeared shiny and wet. See Exhibit B, at p. 50. Like the plaintiff in Morin, the Helbings were aware of the slippery conditions because they believed that the ground was wet.

Also like the plaintiff in Morin, plaintiffs in this instance lack evidence to show that the ice had accumulated to the extent to unreasonably obstruct travel. Plaintiffs contend that it was smooth, black ice that caused the fall. See Exhibit B, at p 51. Plaintiffs have made no allegations of ice accumulated in hills and ridges that obstructed travel in the hotel the parking lot. Again, much like Morin, the weather conditions at the time of the incident are generally applicable to this region and there is no evidence of an unreasonable accumulation of ice. See Exhibit B, at p. 63. Decedent, similar to the plaintiff in Morin, was unequivocally aware of the slippery conditions the morning of the incident. See Exhibit B.

---

[4] This matter is unlike Lewis v. First Montgomery Group, 2010 U.S. Dist. LEXIS 82032 (D.N.J. Aug. 11, 2010) where the climatological data showed that over a week passed between the time of the accident and the last significant snow.

It is axiomatic that because there were generally slippery conditions with no evidence of snow and ice accumulated in such a manner to unreasonably obstruct travel, plaintiffs' claim must fail.

### D. Plaintiff Assumed the Risk and had a Choice of Ways and Is Therefore Barred from Recovery

In addition to the reasons set forth above, plaintiff is precluded from recovering based upon the "assumption of the risk" and the "choice of ways" doctrines. Pennsylvania courts have recognized that implied assumption of the risk has become part of the duty analysis of the trial court and is not part of the case to be determined by the jury. See Zachardy v. Geneva College, 733 A.2d 648, 650 (1999). Where a plaintiff voluntarily, and with an awareness of the specific risks involved, proceeds in the face of a known risk, he absolves a defendant of liability for the injuries sustained. See id. at 651. The elements of an assumption of the risk claim are as follows:

(1) A conscious appreciation of the risk;
(2) Assuming the risk of injury by engaging in such activity; and,
(3) The injury sustained was the same injury that was appreciated and assumed.

Bullman v. Giuntoli, 761 A.2d 566, 573 (Pa. Super. 2000).

When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates as a counterpart to the possessor's lack of duty to protect the invitee from those risks. Carrender v. Fitterer, 503 Pa. 178, 188 (Pa. 1983). By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to agree to accept the risk and to undertake to look out for himself. Id.

11

In slip and fall cases, Pennsylvania courts apply this doctrine and rely on the fact that there is an obvious risk of falling when walking in icy conditions. See Ott v. Unclaimed Freight Co., 577 A.2d 894 (Pa .Super. Ct. 1990); Lewis v. First Montgomery Group, supra (citing Freudenvoll v. Stavros, 49 Pa. D. &. C.4th 328 (Monroe Cty 2000)).

For example, in Ott v. Unclaimed Freight Co., the plaintiff was taking a shortcut through a parking lot that was covered with snow and ice. 577 A.2d at 895. The plaintiff in Ott testified at her deposition that she was aware that the parking lot was covered with ice and was slippery. See id. at 493-4. The Superior Court upheld the Summary Judgment in favor of defendants. Plaintiff knowingly assumed the risk of injury when she proceeded to walk across icy terrain and therefore, the defendants did not owe her any duty. See id.

Similarly, in Freudenvoll, the plaintiff was exiting a restaurant and slipped on ice located one step outside of the exit. Freudenvoll, 49 Pa D & C 4th at 329. Plaintiff testified that, as she was walking into the restaurant, she noticed ice and snow on the sidewalk and surrounding areas. See id. at 333-4. Plaintiff further testified that she still chose to proceed into the restaurant even though she knew there was ice on the sidewalk in her path. See id. In granting summary judgment for the defendants, the Court indicated, "[C]ommon sense dictates that walking over icy surfaces bears the risk of slipping and falling. 'There are some dangers that are so obvious that they will be held to have been assumed as a matter of law despite assertions of ignorance to the contrary.' 'Ice is always slippery, and a person walking on ice always runs the risk of slipping and falling.'" Id. at 337-8.

Additionally, in this matter, decedent could have easily chosen another path by walking along the sidewalk instead of stepping onto the allegedly icy asphalt. Accordingly, the choice of ways doctrine applies in this instance. For "choice of ways to apply, there must be evidence that the plaintiff made an unreasonable decision which exposed him to a hazard that he knew or should have known existed. Downing v. Shaffer, 246 Pa. Super. 512, 371 A.2d 953, 956 (Pa. Super. 1977)). There must be evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger. Id. at 519.

In Van Hauter v. Olympic Gardens, 860 A.2d 1144 (Pa. Super. 2004) the plaintiff exited his apartment, carrying a plastic garbage bag and headed towards his vehicle, which was parked on a side street adjacent to his building. There were two safe routes to the plaintiff's car, but the plaintiff chose to walk across a grassy, unlit and inclined area. While walking on the grass, plaintiff stepped into a hole situated alongside a sewer grate and fractured his fibula and ankle. Plaintiff claimed that the defendant was negligent. The defendant moved for summary judgment, arguing that it did not breach a legal duty to plaintiff because it had provided the plaintiff with two safe travel routes; the trial court granted the motion. The Superior Court affirmed the trial court's decision, and held that the plaintiff had not raised a genuine issue of material fact, thus warranting summary judgment. Thus, the court necessarily acknowledged that the path chosen by the plaintiff constituted an open and obvious danger, and that there existed a safer alternative route. Id.

As in Van Hauter, decedent chose a path with an open and obvious danger while a safer route existed. Similarly, the choice of ways doctrine should be applied in the

instant matter. Decedent voluntarily chose to step onto the allegedly icy asphalt rather than take a more safe route. Despite knowing of the danger, plaintiff still chose to walk across asphalt that he knew to be slippery and dangerous. Therefore the choice of ways doctrine applies as decedent's own negligence caused the slip and fall.

In this instance, reasonable minds cannot differ that decedent assumed the risk of injury when he walked onto asphalt during an ice storm. The decedent was fully aware of the slick conditions that morning, as the freezing rain was falling at the time of the incident and because the Helbings were expecting a winter storm that morning. See Exhibit B, at p. 44. Further, before stepping onto the asphalt, Mrs. Helbing saw that the asphalt appeared wet and shiny. See Exhibit B, at p. 47. There is no doubt that the Helbings perceived the dangerous conditions and understood the risk of falling.

Decedent was aware of both the risk of icy conditions and the obvious possibility of injury, yet still voluntarily walked onto the asphalt instead of the sidewalk. Therefore, decedent assumed the risk of his injury and plaintiffs cannot recover. Further, decedent knew that the ice was present, and still chose the more dangerous course instead of walking along of the sidewalk. By voluntarily proceeding to encounter the known and obvious dangers that one encounters during freezing rain, the decedent is deemed to have agreed to accept the risk of slipping and falling.

The evidence establishes conclusively that the decedent was aware of the risk of slipping and falling during freezing rain. Further, because there was a more safe route available, the choice of ways doctrine applies and moving defendant's Motion for Summary Judgment must be granted.

### III. CONCLUSION

Moving defendant, Wyndham Resorts and Hotels, LLC, respectfully requests that this Honorable Court enter the attached Order, granting its Motion for Summary Judgment and dismissing plaintiffs' claims with prejudice.

                                **POST & SCHELL, P.C.**

                                JENNIFER E. MAGNESS, ESQUIRE
                                Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Motion for Summary Judgment and Accompanying Memorandum of Law, was served to counsel as follows:

Richard Oare, Esquire
1434 S. George Street
York, PA 17403

                                        POST & SCHELL, P.C.

                                        _____
                                        JENNIFER E. MAGNESS, ESQUIRE
                                        Attorney for Defendant

**VERIFICATION**

I, JENNIFER E. MAGNESS, ESQUIRE, verify that I am counsel for the defendant, Wyndham Hotels and Resorts, LLC, in the within action and that the averments of fact set forth in the Motion for Summary Judgment and accompanying Memorandum of Law are true and correct to the best of my knowledge, information, and belief. I understand that this verification is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

POST & SCHELL, P.C.

_____
JENNIFER E. MAGNESS, ESQUIRE
Attorney for Defendant